UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF VINCENZO SANDONATO, by and through, Rita L. Mayo, Co-Trustee of the, VINCENT SANDONATO TRUST, Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, Defendant. | C.A. No. 23-304-JJM-AEM |

# MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff, the Estate of Vincenzo Sandonato (the "Estate"), filed its estate tax return after the applicable deadline, and thus the IRS assesses a failure to file penalty. The Estate has since paid the failure to file penalty and brings forth this suit against the United States for a refund of that penalty—asserting that it had "reasonable cause" for its late filing. After a period of discovery, both parties now cross-move for summary judgment. ECF Nos. 25, 27.

I. BACKGROUND

The relevant facts here are undisputed. Vincent Sandonato died on April 12, 2017. At the time of his death, all of Mr. Sandonato's property, such as his business and real estate interests, was held in the name of the Vincent Sandonato Trust (the "Trust"). ECF No. 26 ¶ 6. Under his will and trust agreement, his sister Rita Mayo became executor of his estate and, with her sister Grazia Pia Sandonato, became

successor co-trustee of the Trust. *Id.* ¶¶ 3,7. To assist in handling its estate tax obligations, the Estate retained attorney Joseph Palumbo—who handled Mr. Sandonato's legal affairs for over twenty years. *Id.* ¶ 20; ECF No. 28 ¶ 6. Attorney Palumbo prepared a written memorandum titled "Estate Tax Analysis" that he provided to Ms. Mayo and discussed with her in his office. ECF No. 26 ¶¶ 33–34. The Estate Tax Analysis represented what was Attorney Palumbo's last written statements related to the Estate's tax obligations. *Id.* ¶ 35.

While Attorney Palumbo was retained, the Estate missed the deadline to file its federal tax return and did not request an extension. *Id.* ¶¶ 43-45. A few months after the tax deadline, the Estate learned that Attorney Palumbo stopped practicing law because of illness and therefore retained new counsel to assist in handling its tax obligations. *Id.* ¶ 49-50. The Estate's new counsel identified mistakes with Attorney Palumbo's tax analysis and—with a certified public accountant firm's help—assisted Ms. Mayo with preparing the Estate's tax return. ECF No. 28 ¶ 12-14. Ultimately, the Estate filed its tax return ten months after the prescribed deadline. ECF No. 26 ¶ 51.

Due to the Estate's untimely filing, the IRS assessed a $468,976 failure to file penalty and a $135,482 failure to pay penalty. *Id.* ¶ 52. The Estate filed with the IRS, a request to abate both penalties on the ground that the Estate had "reasonable cause" for filing its tax return late because it relied on its attorney's tax advice. ECF No. 28 ¶¶ 18-19. The IRS denied the abatement request. *Id.* ¶ 19. The Estate appealed the abatement request denial, and, the IRS Appeals Office fully abated the

failure to pay penalty and partially abated the failure to file penalty, reasoning that "[r]easonable cause was not fully met for the failure to file penalty but was full[y] met for the failure to pay penalty." ECF No. 27-9. The Estate then paid the unabated failure to file penalty and associated interest in the amount of $444,068.78. ECF No. 25-16 at 2. Subsequently, the Estate sought a refund of the failure to file penalty, but the IRS denied the request. ECF No. 27-11. Thereafter, the Estate brought forth this suit.

## II.  STANDARD OF REVIEW

A party is entitled to summary judgment if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party can show a genuine dispute by citing to materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," or by showing that the materials cited either do not establish a genuine dispute or are not supported by admissible evidence. *Id.* Summary judgment is mandated against a party who, given adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case ... on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof of an essential element shows that there is "no genuine issue as to any material fact" because if one element fails, all other facts are rendered irrelevant; it entitles the

moving party to "judgment as a matter of law" because, by definition, the nonmoving party cannot carry their burden at trial. *Id.* at 323.

III. DISCUSSION

A taxpayer who does not timely file a tax return is subject to a mandatory failure to file penalty unless they satisfy the "heavy burden" of proving that "such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1); *United States v. Boyle,* 469 U.S. 241, 245 (1985). *Boyle* is the seminal Supreme Court case on the "reasonable cause" requirement. In that case, an executor asserted that he had "reasonable cause" for the late filing of an estate tax return because the attorney he hired to file that tax return failed to do so on time. *Boyle,* 469 U.S. at 242-43. But the Supreme Court rejected such a claim, holding that "[t]he failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." *Id.* at 252.

With that said, the Supreme Court noted that courts have found "reasonable cause" when "a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." *Id.* at 250. And the Supreme Court acknowledged that, "in such a situation, reliance on the opinion of a tax adviser may constitute reasonable cause for failure to file a return." *Id.* (citing *Commissioner v. Lane-Wells Co.,* 321 U.S. 219 (1944)). The Supreme Court then stated that:

> When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer

4

> to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. 'Ordinary business care and prudence' do not demand such actions.

*Id.* at 251 (citation omitted).

The essential question here is whether the Estate "reasonably relied" on an attorney's substantive tax law advice that it was unnecessary to file a federal tax return, thereby providing "reasonable cause" for the Estate's failure to timely file such a return. The Estate asserts that it reasonably believed it was not required to file an estate tax return or pay estate taxes based on Attorney Palumbo's: (1) repeated verbal assurances, and (2) the Estate Tax Analysis. ECF No. 27 at 12-14. The Estate asserts that the Estate Tax Analysis listed the Estate's assets "considering two scenarios" and concluded that "the Estate did not have a tax liability and there would not be a need to file a federal estate tax return." ECF No. 27-1 ¶ 24. Ms. Mayo attests that when she sought clarification regarding the Estate Tax Analysis, Attorney Palumbo reassured her that "no federal estate taxes were owed and no federal tax return was required to be filed." *Id.* ¶ 26.

But the United States counters, asserting that the Estate Tax Analysis is not substantive tax law advice because it never states that filing a return was unnecessary. ECF No. 32 at 2, 5. The United States notes that Ms. Mayo admitted that, based on the written Estate Tax Analysis, one could not tell whether the Estate would owe tax, and that more information was needed. *Id.* at 6 (citing ECF No. 25-3

5

at 112). They highlight that Ms. Mayo also admitted that she was waiting for more advice from Attorney Palumbo regarding the Estate Tax Analysis but never received such advice. *Id.* (citing ECF No. 25-3 at 135-36). The United States contends that Ms. Mayo's assertion that Attorney Palumbo told her that the Estate did not need to file a federal estate return not only contradicts her prior sworn testimony but also does not provide any "genuine support" because such claims fail to "describe or explain the circumstances of such the 'advice' or 'conclusion,' such as when or how they were provided." *Id.* at 6-7.

A review of Attorney Palumbo's Estate Tax Analysis does show that there was no concrete conclusion on whether the Estate needed to file a federal tax return. The Estate Tax Analysis presents two scenarios—the first concluding that the Estate would owe $24,000 in federal taxes and the second concluding that "there would be no need to file a federal estate tax return and there would be no federal estate tax" if certain real estate is excluded from the Estate's assets. ECF No. 25-8 at 4. Then in the "RECOMMENDATIONS" section on the last page of the Estate Tax Analysis, it states:

> To achieve a maximum result, it is incumbent on the executors to try to either reduce values of the assets subject to tax or come up with additional expenses to be deducted so that there would be no estate tax and the capital gains tax benefits would still be achieved. If we are able to keep the taxable estate below $5.49 million, there would not be any need to even file an estate tax return.

*Id.* at 5. Based on Attorney Palumbo's Estate Tax Analysis it appears that more information may have been needed to determine whether it was unnecessary for the Estate to file an estate tax return—as Ms. Mayo acknowledged in her deposition.

6

But Ms. Mayo asserted that she did have a verbal conversation with Attorney Palumbo regarding the Estate Tax Analysis, *see* ECF No. 25-3 at 91, in which he clarified and concluded it was unnecessary for the Estate to file a federal tax return. *See* ECF No. 27-1 ¶¶ 26-27. And Ms. Mayo noted she relied on Attorney Palumbo's conclusion, along with his asset valuations and assessment of which taxable estate assets in the Estate Tax Analysis because she was unfamiliar with federal tax requirements. ECF No. 27-1 ¶¶ 24-31. A reasonable fact-finder could accept Ms. Mayo's assertion that Attorney Palumbo advised her that it was unnecessary to file a tax return and that she relied on such an assertion when neglecting to file such a tax return. The United States argues that Ms. Mayo has not provided any "valid supporting evidence that Attorney Palumbo 'assured' or 'posited'" that it was unnecessary for the Estate to file a federal estate tax return and contends that Ms. Mayo's testimony on that point contradicts her prior sworn testimony. ECF No. 32 at 6. But such an argument raises a credibility issue as to Ms. Mayo, which the Court should not assess when deciding on a summary judgment motion. *See Labreche v. Brouillette*, No. 1:21-CV-00277-JJM-LDA, 2024 WL 3598849, at *5 (D.R.I. July 31, 2024) (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) (noting that the "court 'should not engage in credibility assessments' when deciding on summary judgment.")).

Further, a reasonable jury could find that it was reasonable for Ms. Mayo to rely on Attorney Palumbo's advice that it was unnecessary for the Estate to file a tax return. Ms. Mayo attested that she: (1) has no experience in estate administration;

7

(2) never served in any fiduciary capacity; (3) was unsophisticated in tax matters; (4) was unfamiliar with the details of her brother's complex estate; and (5) was unfamiliar with the Estate's assets' valuation. ECF No. 27-1 ¶¶ 15-17. Before Mr. Sandonato's death, he informed Ms. Mayo that Attorney Palumbo was familiar with his assets and prepared to manage the Estate's tax matters. *Id.* ¶ 14. Ms. Mayo also learned that Attorney Palumbo handled nearly all of Mr. Sandonato's legal affairs—including real estate acquisitions, sales and leases, and commercial transactions—and was familiar with the terms of the Trust. *Id.* ¶¶ 12-13. Thus, Ms. Mayo engaged Attorney Palumbo to handle the Estate's legal affairs and provide guidance, inclusive of determining whether the Estate owed any taxes and to prepare any required tax returns. *Id.* ¶¶ 18-19.

Based on Ms. Mayo assertions that: (1) she lacked sophistication on tax matters and was unfamiliar with the Estate's assets' valuation; and (2) Attorney Palumbo was familiar with the Estate's assets and competent to manage the Estate's tax matters, a fact-finder could find that it was reasonable for her to rely on Attorney Palumbo's substantive tax advice indicating it was unnecessary to file a return. With the strong indication that Ms. Mayo falls in the category of taxpayers who "are not competent to discern error in the substantive advice of an . . . attorney" a reasonable fact-finder can find that it was reasonable for her not "to challenge [Attorney Palumbo], to seek a 'second opinion,' or to try to monitor [him] on the provisions of the [Tax] Code" when faced with Attorney Palumbo's confusing Estate Tax Analysis

8

and ultimate conclusion that the Estate need not file a tax return. *Boyle*, 469 U.S. at 251.

There are genuine disputes of material facts as to whether: (1) the Estate relied on any substantive tax advice from Attorney Palumbo when it failed to file its tax return; and (2) it was reasonable for the Estate to rely on Attorney Palumbo's substantive tax advice. *See Boyle*, 469 U.S. at 249 n.8 ("Whether the elements that constitute "reasonable cause" are *present* in a given situation is a question of fact . . ..."). Such disputes are for a factfinder to determine.

IV. CONCLUSION

For the reasons stated above, the Court DENIES the United States' Motion for Summary Judgment, ECF No. 25, and DENIES the Estate's Cross-Motion for Summary Judgment, ECF No. 27. This matter will be set for trial shortly.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Court Chief Judge

May 14, 2025